UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

                                                      Case No. 8-11-72505-reg
NELLY A. CROSSFIELD,
                                                      Chapter 7
                              Debtor.
-----------------------------------------------------------------x
VINCENT JADUSINGH,

                              Plaintiff,

        - against -                                   Adv. Proc. No. 8-11-09191-reg

NELLY A. CROSSFIELD,

                              Defendant.
-----------------------------------------------------------------x

## DECISION AFTER TRIAL

Before the Court is an adversary proceeding commenced by Vincent Jadusingh (the

"Plaintiff"), seeking a determination that a debt owed to him by Nelly A. Crossfield (the

"Debtor") is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and/or (a)(4).[1] The Plaintiff

and Debtor were, prior to the events described herein, an unmarried couple who purchased real

property as joint tenants in 1989. The jointly-owned property served as their residence until

2006 when the Plaintiff and Debtor parted ways. The present dispute arises out of the transfer of

the Plaintiff's one-half interest in the real property to the Debtor and the Debtor's failure to

compensate the Plaintiff, as agreed in writing. The Plaintiff argues that both parties

acknowledged that the sole source of funds available to the Debtor to satisfy her obligation to

pay the Plaintiff was from a refinancing of the property pursuant to a reverse mortgage. The

---

[1] Although the complaint and Plaintiff's post-trial memorandum of law refer to Section 727, the Court does not
believe it was the Plaintiff's intent to object to the Debtor's discharge in its entirety. The elements of Section 727
were not presented at trial or in any of the subsequent legal memoranda. It appears this mention of Section 727 was
a pleading error.

Plaintiff states that he did in fact transfer the property, the refinancing did take place, the Debtor received the proceeds of the refinancing and then breached her obligation to pay the Plaintiff.

The Debtor concedes that she executed a written agreement establishing her obligation to compensate the Plaintiff for his one-half interest in the real property, and that she did not transfer any of the reverse mortgage proceeds to her checking account in order to fund a check she tendered to the Plaintiff in advance of the closing. The Debtor maintains that the Plaintiff has failed to satisfy the elements of Sections 523(a)(2) and (a)(4) of the Bankruptcy Code (the "Code"), specifically the elements of intent to deceive or defraud, by a preponderance of the evidence. The Debtor's counsel argued that the Debtor suffers from dementia and was acting under duress when she tendered the check to the Plaintiff and signed the agreement. However, the Debtor chose not to put on any evidence in defense of this action and thus counsel's arguments were not supported by any admissible evidence and cannot be given any weight by this Court. Moreover, the Court found the Plaintiff to be a credible witness who presented a plausible version of the facts which was supported by the evidence admitted at trial.

It was the Plaintiff's transfer of his one-half interest in the real property that enabled the Debtor to effectuate the reverse mortgage, the proceeds from which were more than sufficient to permit the Debtor to meet her obligation to the Plaintiff. The Debtor offered no explanation for her failure to pay the Plaintiff. Therefore, the Court can reach no conclusion other than the Debtor never intended to compensate the Plaintiff for his interest in the real property. The Court finds that the Debtor's oral and written representations to the Plaintiff that she would compensate him for his one-half interest in the real property were false and were made with the intent to deceive the Plaintiff and induce him to transfer his interest in the real property to her.

For these reasons, and for the reasons more fully described herein, the Court finds that

the Plaintiff has sustained his burden under Section 523(a)(2)(A) of the Code and has demonstrated by a preponderance of the evidence that the debt owed to him by the Debtor was obtained by false pretenses, a false representation and actual fraud.

### *Facts*

For over twenty years, from 1984 to 2006, the Plaintiff and Debtor were in a committed relationship. In August 1989, the Plaintiff and Debtor jointly purchased real property in Massapequa, New York (the "Property"), where they resided until 2006. During this time, the Plaintiff supported the Debtor and paid all the costs, upkeep and maintenance associated with the Property. In September 2006, the couple separated and the Plaintiff left the Property. Despite the fact that the Plaintiff no longer lived with the Debtor, he continued to pay the mortgage on the Property.

At the time of their separation, the Property had a value of approximately $370,000, and was encumbered by a $100,000 mortgage, leaving $270,000 of equity. The Plaintiff and Debtor discussed selling the Property but determined that the Debtor's share of the equity, approximately $135,000, would not be sufficient to support her. The Plaintiff and Debtor then agreed that the Plaintiff would transfer his interest in the Property to the Debtor for $70,000. This purchase price would have to be generated through a refinancing of the Property in a reverse mortgage transaction since the Debtor had no other source of funding the purchase price and would be unable to qualify for a traditional mortgage. [2]

The record is clear that the Plaintiff agreed to this arrangement. He testified that he did not want to leave the Debtor without a place to live and no means to support herself. *See* Trial

---

[2] At the time, the Plaintiff was not yet 62 years old and he believed that if he was on the deed a reverse mortgage would not be possible. So, the Plaintiff believed the transfer was necessary in order to accomplish the reverse mortgage.

Tr., 18:8-14. If the Plaintiff had insisted on selling the Property, his one-half interest would have been significantly more valuable than the $70,000 he agreed to accept under the parties' arrangement.

A closing on the transfer of the Property was initially scheduled for September 1, 2008. However, the closing was postponed until September 8th. According to the Plaintiff, he was concerned about signing the deed over to the Debtor without a written agreement and check to ensure payment of the $70,000. *Id.* at 20:13-20. On September 4th, the Plaintiff and Debtor executed and had notarized a document titled "Disbursement Agreement" (the "Disbursement Agreement"), which provided that the Debtor would pay $70,000 to the Plaintiff in exchange for his one-half interest in the Property. *See* Pl. Tr. Ex. 3. That same day, the Debtor delivered to the Plaintiff a check for $70,000. The Plaintiff and Debtor were aware that there were insufficient funds in the Debtor's checking account on September 4th to satisfy the check. However, it was the Plaintiff's understanding that $70,000 of the proceeds from the refinancing would be deposited into the account to cover the check. *See* Trial Tr., 21:19-22; 24:15-25; 25:1-3. A closing was held on September 8, 2008, at which time the Plaintiff executed a deed transferring his interest in the Property to the Debtor. The proceeds of the reverse mortgage to the Debtor were more than $92,000. *See Id.* at 20:2-11; 48:16-25; 49:1-5; *see also* Debtor's Post-Trial Mem. of L. at 3, ECF. No. 19. In early-October 2008, the Plaintiff deposited the check for payment but it was dishonored due to insufficient funds. The Debtor continues to reside in and retain a one-hundred percent interest in the Property.[3]

## Procedural History

After the check was dishonored, on or around September 16, 2009, the Plaintiff

---

[3] *See* Debtor's ch. 7 petition, Sched. A., Case No. 11-72505(REG), ECF. No. 1.

commenced a breach of contract action against the Debtor in New York State Supreme Court. This action was stayed when the Debtor filed her chapter 7 bankruptcy petition on April 13, 2011. On July 12, 2011, the Plaintiff filed a complaint commencing the instant adversary proceeding seeking a determination that the Debtor's $70,000 obligation under the Disbursement Agreement is non-dischargeable under 11 U.S.C. §§ 523(a)(2) and (a)(4).

A trial was held on December 13, 2011. The Plaintiff testified at trial, and Plaintiff's exhibits 1 through 3, 5 and 6 were admitted into evidence. The Debtor did not testify at trial,[4] and the only exhibit proffered by the Debtor was the Plaintiff's summons and complaint in this action, exhibit number 12. The Debtor did not offer any evidence in defense of this action.[5]

On January 23, 2012, the Plaintiff and Debtor filed post-trial memoranda of law in support of their positions, at which time the Court took this matter under submission.

### Burden of Proof

In an action commenced to determine the dischargeability of a debt, the burden of proof lies with the Plaintiff under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). "Exceptions to discharge under §523 must be . . . construed so as to give maximum effect to the Code's policy of providing honest but unfortunate debtors with a 'fresh start.'" *Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 624 (Bankr. N.D.N.Y. 2010) (quoting *Contini v. Cook (In re Cook)*, 2009 WL 2872864, at **3-4 (Bankr. N.D.N.Y.

---

[4] To be clear, the Court is not drawing any "missing witness" inference in this case.

[5] In his post-trial memorandum of law, Debtor's counsel cites to and references the transcript of a deposition taken of the Debtor in pre-petition state court proceedings. The Debtor's counsel refers to the transcript as if it were admitted at trial and part of the record in this proceeding. However, the transcript was never admitted into evidence at trial. The transcript was referred to in the parties' joint pre-trial and amended joint pre-trial memoranda, but the reference was that if the Debtor was unable or unwilling to testify at trial, the deposition testimony was "expected to be presented." *See* Amended Joint Pre-Trial Mem. of L., ECF No. 17. The record reflects that, despite the Debtor's failure to testify at trial, neither the Plaintiff nor the Debtor presented her deposition testimony to be admitted into evidence. Accordingly, the deposition transcript was not admitted at trial and the Court will not consider it in its analysis.

Apr. 7, 2009)). It follows that exceptions to discharge will necessarily be construed strictly against the Plaintiff and construed liberally in favor of the Debtor. *See Hudson v. Raggio & Raggio, Inc.*, 107 F.3d 355, 356 (5th Cir. 1997). There must be satisfactory proof of each element of each cause of action asserted by the Plaintiff, or judgment shall be entered for the Debtor.

The complaint alleges that the $70,000 debt owed the Plaintiff should be found non-dischargeable pursuant to either Bankruptcy Code Section 523(a)(2) or (a)(4), or both. Those sections will be addressed in turn.

*Section 523(a)(2)(A)*[6]

Section 523(a)(2)(A) provides an exception to discharge for "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud." False pretenses, false representations and actual fraud are similar terms but all have somewhat different meanings. *See Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005). One can satisfy the elements of Section 523(a)(2)(A) by establishing only one of the three types of fraud. *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 260 (Bankr. S.D.N.Y. 2000). Although these are separate causes of action, each one has a common element, i.e., an intent to deceive or wrongfully obtain property from another.

*False Pretenses*

---

[6] The Plaintiff does not allege that the Disbursement Agreement was materially false respecting the Debtor's financial condition on which the Plaintiff relied or that it was made or published with the intent to deceive as would be required for a finding that a debt is non-dischargeable under Section 523(a)(2)(B). Instead, the Plaintiff's argument focuses on the statutory predicates of Section 523(a)(2)(A). Accordingly, the Court will not address Section 523(a)(2)(B) in its analysis.

The term "false pretenses" under Section 523(a)(2)(A) has been defined as "conscious deceptive or misleading conduct calculated to obtain, or deprive, another of property." *In re Hambley*, 329 B.R. at 396 (internal citations omitted). In order to sustain a non-dischargeability claim based on false pretenses, the Plaintiff must establish "(1) an implied misrepresentation or conduct by the [Debtor]; (2) promoted knowingly and willingly by the [Debtor]; (3) creating a contrived and misleading understanding of the transaction on the part of the [Plaintiff]; (4) which wrongfully induced the [Plaintiff] to advance money, property or credit to the [Debtor]." *Id.*

The Debtor does not deny that she signed the Disbursement Agreement or that she promised to pay the Plaintiff $70,000 for his one-half interest in the Property and in fact tendered a check in that amount to the Plaintiff. The Debtor's promise to pay the Plaintiff was both express, by way of the Disbursement Agreement, and implied, by the tender of the $70,000 check. Moreover, it has been established through the Plaintiff's testimony that the Plaintiff transferred his one-half interest in the Property to the Debtor in reliance upon her promise to compensate him. The Plaintiff testified that he never would have transferred title to the Property on September 8, 2008 had the Debtor not signed the Disbursement Agreement, presented him with the check, and specifically represented to him that she would pay him for his interest. *See* Trial Tr., 24:15-25; 25:1-3; 31:25; 32:1-18.

The issue before the Court is whether the Debtor knowingly and willfully misrepresented her intention to pay the Plaintiff. The Court finds that the only reasonable conclusion that can be drawn from the Debtor's actions, absent a reasonable explanation to the contrary, is that she never intended to pay the Plaintiff the $70,000.[7] The record reflects that the Debtor took title to the Plaintiff's interest in the Property. Using the Property as collateral, the Debtor received more

---

[7] As noted earlier, the Debtor's counsel has mentioned in his briefs filed with the Court that the Debtor suffers from dementia. Although this might tend to negate a finding of intentional conduct, the Debtor has introduced no evidence to support such a medical conclusion and the Court can give it no evidentiary weight.

than $92,000 from the proceeds of the refinancing. The Debtor then diverted these proceeds to other use,[8] and failed to meet her obligation to pay the Plaintiff $70,000. These facts, along with the absence of any defense by the Debtor, lead this Court to the conclusion that the Debtor knowingly and willingly misrepresented her intention to pay the Plaintiff.

This is a simple case. The Debtor had the funds to pay the Plaintiff and chose not to. This was a conscious decision by the Debtor not to honor her obligation to pay the Plaintiff, despite her receiving full title to the Property. Accordingly, the Court finds the Plaintiff has sustained his burden to prove by a preponderance of the evidence that the $70,000 debt arising out of the Disbursement Agreement is non-dischargeable based on false pretenses.

*False Representation*

In order to sustain a non-dischargeability claim based on a false representation, the Plaintiff must establish that "(1) the [Debtor] made a false or misleading statement (2) with intent to deceive (3) in order for the [P]laintiff to turn over money or property to the [Debtor]." *Frishberg v. Janac (In re Janac)*, 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009).

The Court finds that the Plaintiff has sustained his burden to prove by a preponderance of the evidence that the debt should be non-dischargeable based on the Debtor's false representation. The analysis is similar to the 'false pretenses' analysis. The representation at issue in this case is the Debtor's representation in the Disbursement Agreement that she would pay the Plaintiff $70,000 in exchange for his interest in the Property. The Debtor made this representation when she signed the Disbursement Agreement and tendered a $70,000 check to the Plaintiff on September 4, 2008. Just four days later, the Plaintiff transferred the Property to the Debtor and she received over $92,000 — after paying outstanding mortgage arrears, closing

---

[8] The Debtor has provided no explanation as to what happened to the reverse mortgage proceeds.

costs and fees — along with a one-hundred percent interest in the Property. Having received no evidence of intervening events which prevented the Debtor from honoring her obligation to the Plaintiff, and considering that the Debtor had the ability to pay the Plaintiff, the Court finds that the only reasonable legal conclusion is that the Debtor never intended to pay the Plaintiff for his interest in the Property. Thus, the Court finds that the Debtor made a false statement with the intent to deceive the Plaintiff.[9]

Accordingly, the Court finds the debt owed to the Plaintiff to be non-dischargeable based on the Debtor's false representations.

*Actual Fraud*

The Plaintiff argues that the debt is also non-dischargeable based on the Debtor's actual fraud. The elements for "five finger" fraud under New York state law and for 'actual fraud' under the Code are roughly the same and include: "(1) that the debtor made a false representation; (2) that at the time made, the debtor knew the statement was false; (3) the misrepresentation was made with an intent to deceive; (4) that the creditor reasonably relied on that misrepresentation; and (5) that the creditor was damaged as a result of the misrepresentation." *Citibank (South Dakota), N.A. v. Olwan (In re Olwan)*, 312 B.R. 476, 483 (Bankr. E.D.N.Y. 2004); *compare with Global Minerals and Metals Corp. v. Holme*, 824 N.Y.S.2d 210 (N.Y. App. Div. 2006).

The Court finds that the Plaintiff has successfully demonstrated that (1) the Debtor made a false representation, which (2) the Debtor knew was false and was made with (3) the intent to deceive the Plaintiff into transferring the Property. Furthermore, the Court finds that it was

---

[9] The third element, i.e., that the debt was created in reliance on the Debtor's misrepresentation, has already been proven by the Plaintiff and discussed within the false pretenses section, above.

reasonable for the Plaintiff to rely on the Disbursement Agreement and the check tendered by the Debtor when he transferred the Property to the Debtor. Finally, it is clear that the Plaintiff was damaged as a result of the Debtor's misrepresentation. The Plaintiff transferred an interest in real property worth approximately $135,000 and received nothing in return.

There is nothing in the record that could lead this Court to conclude anything other than that the Debtor knowingly engaged in a scheme to defraud the Plaintiff. The Debtor chose not to testify and presented no intervening acts or circumstances explaining why she failed to honor the Disbursement Agreement. Based on the facts extant and the failure of the Debtor to offer any plausible explanation to the alternative, the Court finds that the Debtor offered the check to the Plaintiff, signed the Disbursement Agreement and represented that she would honor the Disbursement Agreement, with the intent to deceive the Plaintiff for the purpose of obtaining his one-half interest in the Property. The Court will not find that these were merely a fortuitous chain of events that led to the Debtor obtaining full possession and ownership of the Property and the Plaintiff being left with nothing.

Accordingly, the Court finds that the debt owed to the Plaintiff in the sum of $70,000 is non-dischargeable based on the Debtor's actual fraud, pursuant to Section 523(a)(2)(A) of the Code.

## *Section 523(a)(4)*

Section 523(a)(4) of the Code provides an exception to discharge for any debt obtained by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The Plaintiff does not argue or submit any evidence in support of a finding that the Debtor was acting in a fiduciary capacity at the time the Disbursement Agreement was

signed. Furthermore, while the complaint references embezzlement, the Plaintiff has advanced

no arguments or evidence in support of a finding that the Debtor committed embezzlement.

Accordingly, the Court will only address whether the Debtor's actions constitute larceny under

Section 523(a)(4).


*Larceny*

  In the context of Section 523(a)(4), "larceny" has been defined as "the fraudulent and

wrongful taking and carrying away of the property of another with intent to convert such

property to the taker's use without the consent of the owner." *In re Balzano*, 127 B.R. 524, 532

(Bankr. E.D.N.Y. 1991) (internal citation omitted).  Unlike embezzlement, for a defendant to be

guilty of larceny, "the unlawful intent must exist at the time of the original taking." *Adam v.*

*Scheller* (*In re Scheller*), 265 B.R. 39, 53 (Bankr. S.D.N.Y. 2001) (internal citations omitted).  In

addition, "[t]he larceny exception cannot apply where the debtor's original possession of the

[property] was lawful." *Brown v. Heister* (*In re Heister*)*,* 290 B.R. 665, 674 (Bankr. N.D. Iowa

2003) (citing *Werner v. Hoffman* 5 F.3d 1170, 1172 (8th Cir. 1993)).

  The Plaintiff has failed to demonstrate by a preponderance of the evidence that the

Debtor is guilty of larceny.  The Plaintiff does not allege, nor does the record reflect, that the

Debtor obtained the Property without the Plaintiff's consent.  To the contrary, the record reflects

that, in accordance with the Disbursement Agreement, the Plaintiff consented to the transfer of

the Property and that the Debtor was lawfully in possession of the Property at the closing.

  Accordingly, the Court finds that the Plaintiff has failed to sustain his evidentiary burden

to demonstrate by a preponderance of the evidence that the debt owed to him by the Debtor

should be excepted from discharge pursuant to Section 523(a)(4) of the Code.

*Holder in Due Course*

In his post-trial memorandum of law, the Plaintiff makes reference to a "presumption of fraud" which arises under New York Penal Law § 190.10 when a check is dishonored for insufficient funds. *See People v. Dean*, 368 N.Y.S.2d 349 (1975). In response, the Debtor's counsel argues that the Plaintiff lacks standing to make this "fraud" argument based on the fact that the Plaintiff lacked "holder in due course" status because he knew there were insufficient funds in the Debtor's account to cover the check at the time it was given to him.

Both arguments miss the point. As should be evident by this Decision, the findings as to the Debtor's intent to deceive and fraudulent conduct are not solely, or even primarily, based upon the return of the check for insufficient funds. The findings of the Court are based primarily upon the Debtor's promise to pay found in the Disbursement Agreement, her subsequent failure to pay and all of the facts and circumstances surrounding the transactions in this case. The references to New York Penal Law and the Uniform Commercial Code do not bear on this Court's decision.

*Conclusion*

For the reasons stated herein, the Court finds that the Plaintiff has proven by a preponderance of the evidence that the $70,000 debt owed by the Debtor to the Plaintiff pursuant to the Disbursement Agreement should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). Accordingly, Judgment will enter in favor of the Plaintiff.

Dated: Central Islip, New York
       August 22, 2012

                              */s/ Robert E. Grossman*
                              Hon. Robert E. Grossman, U.S.B.J.